UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - -x

In re:                              :

CHRISTOPHER HUNTINGTON              :        BK No. 08-13858
              Debtor                         Chapter 7

- - - - - - - - - - - - - - - - - -x


### DECISION AND ORDER DENYING RELIEF FROM STAY


APPEARANCES:

        Russell D. Raskin, Esq.
        Attorney for Debtor
        RASKIN & BERMAN
        116 East Manning Street
        Providence, Rhode Island 02906

        William M. Kolb, Esq.
        Attorney for Creditor, Oscar Sahagian
        Law Offices of William M. Kolb LLC
        One Ship Street
        Providence, Rhode Island 02903

        Lisa A. Geremia, Esq.
        Chapter 7 Trustee
        GEREMIA & DeMARCO LTD.
        1350 Division Road, Suite 102
        West Warwick, Rhode Island 02983


**BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge**

BK No. 08-13858

Heard on Creditor Oscar Sahagian's Motion for Relief from Stay
– specifically for leave to record a post-petition attachment
against certain escrowed funds.  At issue is whether Sahagian is
entitled to such relief, where the bankruptcy petition was filed
*before* Sahagian allegedly attained secured creditor status.  Based
on the undisputed evidence and facts,[1] the applicable law, and the
written submissions and oral arguments of the parties, relief from
stay is **DENIED**.

## TRAVEL AND BACKGROUND

In February 2005, the Debtor entered into a *Clinical Advisor
Agreement* with NuVasive, Inc., a medical device company, wherein
NuVasive agreed to "pay Debtor a consulting fee on a quarterly
basis for ten (10) years consisting of royalties of one percent
(1%) on all net sales of any 'lateral plate' developed or refined
by NuVasive in conjunction with [the] Debtor."  Joint Pretrial
Order, 2 (Doc. No. 259).  Lateral plates (whatever they are), were
first commercialized in June 2007, with royalties to be paid until
June 2017.  Said payments, (the "NuVasive Funds,") which are still
being generated, are the subject of this dispute.  In November
2007, Sahagian obtained a state court judgment against the Debtor,

---

[1] The facts are taken from "Facts Admitted and Requiring No
Proof" section of the parties' Joint Pretrial Order (Doc. No. 259).

1

as a guarantor, in the amount of $139,945.77 (plus costs) for unpaid rent.

In April 2008, the Debtor's wife filed for divorce in the Rhode Island Family Court. Subsequently, she obtained a Temporary Support Order and had the NuVasive Funds determined to be marital property. Joint Pre-Trial Order, Ex. F (Doc. No. 259). The Family Court Judge also ordered that the NuVasive Funds were to be used for the support of the children, including but not limited to the payment of tuition at the Moses Brown School, and that any remaining funds be escrowed and used for child support, generally. Id.

On December 2, 2008, at 10:06 a.m., the Debtor filed this Chapter 7 case. On the same date, an order was entered by the Rhode Island District Court granting Sahagian's Motion to Attach the NuVasive Funds.[2] Joint Pre-Trial Order, Ex. B. The Debtor moved, unsuccessfully, to vacate the state court order, and no appeal was taken from the denial of his motion. Joint Pre-Trial Order, Ex. D.

---

[2] This Court was expecting to hear and determine, as a contested evidentiary issue, whether Sahagian's attachment was obtained pre or post-petition. At the hearing, however, the parties agreed that no factual issues were in dispute, and that the order authorizing attachment was issued subsequent to the filing of the bankruptcy petition.

BK No. 08-13858

In January 2009, pursuant to 11 U.S.C. § 362(b)(2)(B), the Moses Brown School filed a motion in this Court for relief from stay, and for leave to apply the escrowed NuVasive Funds to tuition and fees.  The Trustee voiced a "no objection," and after hearing on February 19, 2009, the motion was granted, stating in part that "[b]ecause this dispute involves family law issues *only*, and since the funds in question are exempt from the operation of the automatic stay under 11 U.S.C. § 362(b)(2)(B), this Court has no jurisdiction to hear or determine any of the issues in dispute." With no objections filed, the Motion was granted (Doc. No. 64), and there was no appeal.

On January 26, 2009, Attorney Kolb entered his appearance on behalf of Sahagian, and as a result, Sahagian, through counsel, received notice of:  (1) the February 12, 2009 hearing on Moses Brown's Motion for Relief from Stay; (2) the fact that, after hearing, the matter was taken under advisement; and (3) the entry of the February 19, 2009 Order granting relief from stay.  Over two months later, on May 2, 2009, the instant Motion for Relief from Stay was filed, to which the Debtor filed a timely objection.

On May 27, 2009, Debtor and his wife entered into a Marital Settlement Agreement which incorporated prior Family Court orders allocating all present and future NuVasive Funds to child and spousal support.  On June 30, 2009, the family court judge entered

3

BK No. 08-13858

a "Decision Pending Entry of Final Judgment" which included and incorporated all relevant prior orders.

<u>**THE ARGUMENTS**</u>

In seeking relief from stay Sahagian contends that it is irrelevant whether the state court attachment was obtained pre or post-petition, because of the language in this Court's February 19, 2009 Order that the funds in dispute were not property of the bankruptcy estate. He also cites 11 U.S.C. § 362(c)(1)(2008) which provides that "the stay of an act against property of the estate under subsection (a) of this section continues [only] until such property is no longer property of the estate...."

The Debtor counters that Sahagian's Order Authorizing Attachment is a nullity, because: (1) it was issued subsequent to the Debtor's bankruptcy filing, and (2) since an attachment had not been perfected,[3] Sahagian was an unsecured creditor who may not improve his standing, post-petition, to that of a secured creditor.

<u>**THE RULING**</u>

Sahagian's Order Authorizing Attachment is not enforceable here because "[u]nder Rhode Island law, an attachment creates a perfected lien on the attached property *when it is recorded*. An

---

[3]   Although the issue was not addressed by either party, perfection of the attachment, even if valid under Rhode Island law, would not, *per se*, entitle Sahagian to the NuVasive Funds, since such an attachment may have been an avoidable preference under 11 U.S.C. § 547.

BK No. 08-13858

attachment creates 'a lien on the property attached which is held in the custody of the law to satisfy such judgment or decree as the plaintiff may obtain.'" *In re Giordano*, 188 B.R. 84, 87 (D.R.I. 1995) (quoting *In re Gibbons*, 459 A.2d 938, 939 (R.I. 1983)(emphasis added)); *see also In re M & G Builders, Inc.*, 165 B.R. 90, 91 (Bankr. D.R.I. 1994)("An attachment is perfected once it is properly served....")(citations omitted). Here, the authorization to attach was obtained *after* the filing of the bankruptcy petition,[4] so an attachment could not thereafter be served upon the holder of the asset without violating the automatic stay. Therefore, since he was not in a position to perfect a pre-petition, non-avoidable attachment, Sahagian's status is that of an unsecured creditor.

For the foregoing reasons, Relief from Stay is **DENIED.**

Dated at Providence, Rhode Island, this   1st      day of March, 2010.

_____
Arthur N. Votolato
U.S. Bankruptcy Judge

Entered on docket: 3/1/10

---

[4]   On December 2, 2008, the Rhode Island District Court granted Sahagian's five separate "Motions to Attach" against various entities, including NuVasive, Inc. Joint Pre-Trial Order, Ex. B (Doc. No. 259).